UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROSEMARY VEGA and JESUS RAMOS, | ) | |
| | ) | |
| Plaintiffs, | ) | 15 C 3221 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| CHICAGO BOARD OF EDUCATION, JADINE CHOU, DAVID VITALE, MAHALIA HINES, ANDREA ZOPP, CARLOS AZCOITIA, JESSE RUIZ, HENRY BIENEN, REGINALD WILLIAM, WILLIE SIMS, MARK SCOTT, JOSHUA McCALLISTER, ELLIS INGRAM, VARRICK DOUGLAS, and KENDALL DONALDSON, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER

Plaintiffs' motion for leave to file instanter [166] is granted. Plaintiffs shall file their memorandum as a separate docket entry. For the reasons set forth below, and to the extent it was previously entered and continued [157], Plaintiffs' motion for sanctions [122] is denied. Attorney Caryn Shaw is terminated as counsel for Plaintiffs. This matter is referred to the Executive Committee of the Northern District of Illinois for consideration of disciplinary action, if any, against Attorney Caryn Shaw. Defendants are entitled to recover the reasonable attorney fees and costs they incurred in litigating matters regarding the events immediately following the Jadine Chou deposition. By 4/17/2018, Defendants shall submit a memorandum, with evidentiary support, regarding those fees and costs. Plaintiffs may respond to Defendants' memorandum by 5/8/2018.

## STATEMENT

Plaintiffs Rosemary Vega and Jesus Ramos filed a motion for sanctions against Defendants and their counsel, asserting various instances of unprofessional conduct by counsel. Doc. 122. The court denied the motion in substantial part for reasons stated on the record, and entered and continued the motion as it pertained to a verbal and physical scuffle that arose between Caryn Shaw, one of Plaintiffs' attorneys, and Lisa Dreishmire, one of Defendants' attorneys, following the deposition of Defendant Jadine Chou, the chief of safety and security at Defendant Chicago Board of Education. Doc. 157. Given the seriousness of the matter, and because the facts were disputed, the court held an evidentiary hearing over the course of two days, Docs. 167, 171, and accepted post-hearing briefs, Docs. 199, 204. Having carefully evaluated the credibility and accuracy of the witnesses' testimony, and having reviewed the parties' written submissions, the court finds that Shaw swore at Dreishmire and then intentionally pushed her with force sufficient to knock her backwards.

Four witnesses testified: Don Villar, Shaw's co-counsel; Pauline Strohl, the court reporter hired by Plaintiffs' counsel to transcribe the deposition; Dreishmire; and Chou. Strohl, Dreishmire, and Chou testified credibly, while Villar testified credibly in part and evasively in part. As the witnesses agreed, and as the transcript confirms, the deposition was very heated. After the deposition, Shaw said to Dreishmire, "What is your fucking problem" or "What the fuck is your problem." Shaw asked Dreishmire to step outside the deposition room, and Dreishmire declined, asking that they go back on the record. Shaw declined to go back on the record, said something along the lines of "No, this is personal, we need to talk," walked towards Dreishmire, and, with one or both arms outstretched, pushed Dreishmire, propelling her backwards. As Strohl and Dreishmire testified, the push was intentional and forceful, not accidental, inadvertent, or mild. Chou, who did not see Shaw approach Dreishmire because she was checking her emails, testified that she looked up and saw Shaw with her hands on Dreishmire's upper body in a stance suggesting that she was pushing or pulling Dreishmire.

Even Villar, Shaw's co-counsel, testified on cross-examination—very reluctantly and uncomfortably, given that he is Shaw's colleague and works for Shaw's sister—that Shaw's emotions had reached a "boiler point" by the end of the deposition, that Shaw intentionally made contact with Dreishmire, and that Dreishmire moved backwards as a result. Unlike the three other witnesses, Villar testified that Dreishmire moved backwards on her own accord rather due to force applied by Shaw, but Dreishmire, Strohl, and Chou were more credible than Villar on that particular point. Shaw wanted Dreishmire to leave the room with her to discuss Dreishmire's "fucking problem," and when Dreishmire refused and instead asked to go back on the record, Shaw escalated to a physical response.

Plaintiffs attempt to cast doubt on the foregoing description of the incident, but their arguments fail to persuade.

First, Plaintiffs note that Strohl, the court reporter, said "I saw nothing" when asked in the deposition room about the confrontation in its immediate aftermath; at the evidentiary hearing, by contrast, Strohl described in detail how Shaw had approached and pushed Dreishmire. Yet as Strohl credibly explained at the hearing, she said "I saw nothing" because she just wanted to leave and not partake in any conversation about the incident. That is an understandable (though not entirely praiseworthy) reaction, and it credibly explains why Strohl said what she said in the deposition room.

Second, Dreishmire, Chou, and Strohl were not entirely consistent as to where precisely in the room the physical contact took place. Specifically, Chou said that it took place slightly outside the doorway, while Strohl said it took place inside the doorway, and if Chou were right, then Strohl, due to her position in the room, would not have been able to see it. This variance in their testimony as to where the physical contact took place is a minor discrepancy that is not surprising given both the intensity of the moment and the passage of time. All three witnesses testified credibly that they witnessed Shaw intentionally make contact with Dreishmire, and their testimony was consistent in all material respects.

Third, Plaintiffs argue that Strohl is a biased witness because the court reporting company for which she works, Urlaub Bowen and Associates, has a contract with the Chicago Board of Education worth $350,000.00. The argument is unpersuasive. As an initial matter, Plaintiffs'

2

counsel retained Strohl to transcribe the Chou deposition. More importantly, Strohl credibly testified that she was unaware of any contract between Urlaub Bowen and the Chicago Board of Education. Because Strohl was unaware of any such contract, it cannot have led her to slant her testimony in Dreishmire's favor.

Plaintiffs' arguments fail on the merits, but it also bears mention that Shaw herself, despite describing the incident in writing in the present motion and despite having orally described it (from counsel's podium, not the witness stand) during the July 20, 2017 motion hearing, chose not to testify at the evidentiary hearing. Shaw is the witness who could have spoken most directly to her own subjective state of mind—that is, to whether her contact with Dreishmire was in fact intentional or inadvertent. The inference the court draws from Shaw's decision not to testify is that her testimony, if truthful, would have harmed her cause by confirming that she intended to push Dreishmire in a fit of anger and in an effort to get her outside the room immediately after she had declined Shaw's request to do so. *See Doe v. Johnson*, 52 F.3d 1448, 1460-61 (7th Cir. 1995); *Niehus v. Liberio*, 973 F.2d 526, 531 (7th Cir. 1992).

This whole episode is extraordinarily unfortunate. But the episode was brought to the court's attention—by Shaw, no less—and it is the court's obligation to address it. As a sanction for her verbal and physical attack on Dreishmire, Shaw may no longer participate as an attorney in this case. The matter is also referred to the Executive Committee of the Northern District of Illinois for appropriate disciplinary action, if any. Finally, because Shaw's false and vexatious descriptions of the incident in the present motion, Doc. 122 at ¶¶ 40-42, and at the July 20, 2017 motion hearing necessitated the evidentiary hearing and subsequent briefing, Plaintiffs' counsel must reimburse Defendants for the reasonable attorney fees and costs they incurred in litigating the incident. This monetary award is imposed pursuant to 28 U.S.C. § 1927 or, in the alternative, the court's inherent authority. *See Carr v. Tillery*, 591 F.3d 909, 919 (7th Cir. 2010) ("A court has inherent power, which is to say a common law power, to punish misconduct by lawyers appearing before it."); *Methode Electronics, Inc. v. Adam Techs., Inc.*, 371 F.3d 923, 927 (7th Cir. 2004) (holding that the district court possessed inherent authority to award attorney fees and costs incurred by the defendants when defense counsel was required to appear at a hearing after the plaintiff filed a complaint that included false allegations regarding venue).

March 28, 2018

United States District Judge